ROLAND L. BELSOME, Judge.
| , While this appeal stems from allegations of double-crossing, deception, and defamation, our opinion focuses on the discussion of prescription, peremption, and no cause and/or no right of action. According to the plaintiff, this tale of intrigue began with a conspiracy that resulted in defamatory statements being made by defendants, the Housing Authority of New Orleans (HANO), through its agent Dwayne Muhammad, and Mir*Fox & Rodriguez, P.C. (MFR), through its agents Everett Blaylock and Rochelle Jones. These statements concerned business dealings between Inspeq Services, LLC, the plaintiffs *447 inspection company, and defendant, HANO, and were purportedly republished by Gilmore Kean, LLC, and Edgemere Consulting Corporation, in an operational assessment of HANO. The plaintiff, Lester Zeigler, individually and on behalf of Inspeq, filed suit for defamation and later added additional claims and defendants. He now appeals the trial court’s judgment granting the defendants’ peremptory exceptions and dismissing the plaintiffs entire petition with prejudice. We affirm in part, reverse in part and remand for further proceedings.
i statement of the case and PROCEDURAL HISTORY
The backdrop of this story involves the administration and operation of two housing assistance programs within HANO: the Housing Choice Voucher Program, also known as “Section 8” housing, and the Displaced Housing Assistance Program, which is a program to provide temporary housing relief to evacuees and victims of natural disasters. Both programs required housing inspections to insure that the respective property met the minimum requirements under the program.
In his recast petition,[1] the plaintiff essentially claims that the defendants unscrupulously schemed to insert MFR into the public housing inspection business and defamed him in the process. The intricate, and sometimes tedious, recitation of the facts that led to the ruination of the plaintiffs business is set forth below.
In August of 2007, Inspeq was awarded a low-bid contract with HANO to inspect housing units under the Voucher Program. Shortly after Inspeq received this contract, Dwayne Muhammad was appointed as the Administrator, and was later promoted to the Chief Operation Officer of the Voucher Program. After two extensions, the contract expired by its terms on November 8, 2009.
Meanwhile, the Harris County Housing Authority was appointed by HUD to manage the Displaced Housing Program in New Orleans. In June of 2008, the Harris Housing Authority hired MFR, a Texas public accounting firm, to assist in performing accounting functions. When Hurricane Ike made landfall in Texas, the | (¡Harris Housing Authority was forced to cease operations in New Orleans. As a result, HANO issued an emergency no bid contract to MFR to perform accounting and administration services for the Displaced Housing Program. MFR issued a sub-contract to Inspeq to perform the required inspections as it had no experience in this field, and Inspeq had the only local certified inspectors. Both MFR’s emergency contract and Inspeq’s sub-contract relative to the Disaster Housing Program were set to expire on August 31, 2009.
Prior to the expiration of its contract with HANO, MFR hired Rochelle Jones. Unbeknownst to Inspeq, Jones was married to Muhammad.
At this point, the plaintiff alleges the following factual scenario in his pleadings. HANO, MFR, Jones, and Muhammad became involved in an elaborate scheme. Their goal was to arrange for MFR to take control of the Voucher Program and eventually perform the inspections, driving In-speq out of business with HANO. In July of 2009, Muhammad also submitted false reports regarding Inspeq and internal employees’ job performances to investigators with the United States Department of *448 Housing and Urban Development (HUD) in order to justify the immediate need for MFR’s emergency no-bid takeover of the Voucher Program. In July and August of 2009, Muhammad began to delay payments of Inspeq’s invoices to create pressure and cause dissent among Inspeq’s employees. Just before Inspeq’s contract with HANO was set to expire on August 3, 2009, Muhammad issued a request for proposals. Suspecting that Muhammad intended to disclose his bid information to MFR, In-speq did not respond to the request and |4Muhammad withdrew the request. Consequently, MFR was awarded a no-bid contract to oversee the Voucher Program. Sometime in August of 2009, the plaintiff learned that Jones and Muhammad were married and living in a home subsidized by the Voucher Program. He reported this information to HANO and Muhammad was later prosecuted in federal court.
Once MFR obtained control of the program, however, it intentionally delayed payment of invoices in an attempt to lure Inspeq’s employees to leave. On September 11, 2009, MFR, using a non-existent name, advertised a job fair seeking certified inspectors in the Times-Picayune.
In October of 2009, HUD awarded Gilmore Kean a nine-month contract to provide administrative receivership services to HANO. Gilmore Kean was obligated to provide oversight of HANO’s operations as well as to conduct an operational assessment. Edgemere was retained to assist Gilmore Kean in the assessment. In January of 2010, Edgemere interviewed MFR’s executive, Edward Blaylock, and other HANO employees regarding Inspeq’s job performance. At the interview, false statements regarding Inspeq’s failure to meet its contractual obligations were provided to Edgemere. The erroneous information was later published in the operational assessment of HANO provided to HUD by Gilmore Kean on February 17, 2010. The assessment was made available to the public and circulated throughout the news media.
The plaintiff subsequently filed a defamation lawsuit on August 3, 2010. The case was removed to federal court and remanded back, after Gilmore and 1 fiEdgemere reached a settlement and were dismissed from the case. Several supplemental and amending petitions, which added new claims and defendants,[2] were filed. Later, the recast petition, which alleged the foregoing facts, was filed. The causes of action included: defamation, conspiracy, vicarious liability or negligent failure to supervise, violations of the Louisiana Unfair Trade Practice Act (LUTPA), tortious interference with a contract/or business,[3] and intentional infliction of emotional distress for Zeigler personally.[4]
In response to the recast petition, all of the defendants filed similar exceptions of peremption, prescription, no cause of action, and no right of action; however, MFR included immunity among its exceptions. Legal memoranda in support and against the exceptions were filed. Without taking additional evidence or argument, the trial court granted the defendants’ exceptions asserting reasons at a hearing on April 13, 2013. The court signed a written judgment on April 23, 2012.

*449
STANDARD OF REVIEW

“The standard controlling review of a peremptory exception of prescription requires that this court strictly construe the statutes ‘against prescription and in favor of the claim that is said to be extinguished.’ ” Security Ctr. Prot. Servs., Inc. v. All-Pro Security, Inc., 94-1317, 94-1318 (La.App. 4 Cir. 2/23/95), 650 So.2d 1206, 1214 (quoting Louisiana Health Service v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1098). Of the possible constructions of a prescriptive or preemptive statute, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted. Ames v. Ohle, 2011-1540 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 391.
A party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. Cichirillo v. Avondale Indus., Inc., 04-2894, p. 5 (La.11/29/05), 917 So.2d 424, 428 (citation omitted). Although evidence may be introduced to support or controvert any objection pleaded, in the absence of evidence, an objection of prescription must be decided upon facts alleged in the petition with all allegations accepted as true. Id. (citations omitted).
On the other hand, exceptions of no cause of action and no right of action present legal questions, and are reviewed under the de novo standard. St. Pierre v. Northrop Grumman Shipbuilding, Inc., 12-545, p. 7 (La.App. 4 Cir. 10/24/12), 102 So.3d 1003, 1009 (citations omitted). The peremptory exceptions of no cause and no right of action are legally distinct. Id. “When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief for himself or herself is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit.” Id., 12-545 at pp. 7-8, 102 So.3d at 1009 (quoting 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6:7 (2d ed. 2012)(“Maraist & Lemmon, Civil Procedure”)). “The proper l7objection is no cause of action ‘when the law does not provide a remedy to anyone under the facts alleged in the petition.’ ” Id., 12-545 at 8, 102 So.3d at 1009(quoting 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6:7 (2d ed. 2012)(“Maraist & Lemmon, Civil Procedure”)). In other words, “an exception of no cause of action raises the question of whether the law affords any remedy to the plaintiff under the allegations of the petition, while the exception of no right of action raises the issue of whether the plaintiff belongs to the particular class to which the law grants a remedy for the particular harm alleged by the plaintiff.” Id. (citations omitted).
An exception of no cause of action is reviewed based upon the four corners of the petition together with the attachments to the petition. Milburn v. Emanuele, 2012-0235, p. 3 (La.App. 4 Cir. 6/13/12), 96 So.3d 638, 640 (citations omitted). The burden of demonstrating that a petition fails to state a cause of action is upon the mover. Id. (citing Ramey v. DeCaire, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 119).

DISCUSSION

On appeal, the plaintiff asserts nine assignments of error concerning the trial court’s granting of all of the defendants’ exceptions and dismissal of all of his claims.[5] Since the plaintiff filed suit *450 against the defendants in his personal and in his representative capacity, we will first address the assignments of error related to lahis personal claims; then, we will address the remaining assignments of error related to the claims brought on behalf of Inspeq.

Plaintiff’s Personal Claims

The plaintiff raises two trial court errors regarding his personal claims: 1) its finding that he had no personal standing to sue; and 2) its granting of the no cause of action exception to his emotional distress claim.

Standing

First, the plaintiff asserts that the trial court erred in granting defendants’ peremptory exception of no right of action regarding his personal standing to sue. The function of an exception of no right of action is a determination of whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. St Pierre, supra. Aside from the claim for intentional infliction of emotional distress, discussed infra, the plaintiff only asserts causes of action related to Inspeq’s business dealings.
La. R.S. 12:1329 states in pertinent part: “[a] member [of an L.L.C.] shall have no interest in limited liability company property.” Thus, members of a limited liability company have no right to sue personally for damages to limited liability company property. La. R.S. 12:1320(B). See also, Roth v. Voodoo BBQ, 07-0295, p. 3 (La.App. 4 Cir. 08/01/07), 964 So.2d 1095, 1097; and Van Meter v. Gutierrez, 2004-0706 (La.App. 4 Cir. 2/16/05), 897 So.2d 781, 787 (citation omitted).
^Considering the applicable law, we find that the plaintiff, in his personal capacity, has no standing to personally sue and recover damages for injury suffered by Inspeq. Thus, the trial court correctly granted defendants’ exception of no right of action relative to the plaintiffs personal standing to sue.

Intentional Inñiction of Emotional Distress

Second, the plaintiff contends that the trial court erroneously dismissed his individual claim for intentional infliction of emotional distress finding that he failed to state a cause of action. We disagree.
To establish a claim for intentional infliction of emotional distress, the plaintiff must prove: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Roberson v. August, 2001-1055, p. 13 (La.App. 4 Cir. 5/29/02), 820 So.2d 620, 629 (citation omitted).
“Extreme and outrageous conduct” required to maintain a cause of action for the intentional infliction of emotional distress is conduct so atrocious as to pass the boundaries of decency and to be utterly intolerable to civilized society. Id. (citation omitted). The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like. White v. Monsanto Co., 585 So.2d 1205, 1210 (La.1991). *451 Liability for emotional distress intentionally caused by extreme and | inoutrageous conduct does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Roberson, supra (citation omitted).
In the present case, the pleadings assert that the plaintiff endured work-related emotional stress as a result of the defendants’ outrageous conduct in disseminating false information about his business and intentionally driving him out of business. He further avers that the conduct was reasonably certain to cause him severe emotional distress, and it did in fact cause him to be hospitalized.
Although the pleadings contain a conclusory assertion that the defendants’ conduct was calculated to cause him severe emotional distress, the facts as alleged in the pleadings and affidavit submitted by the plaintiff propose that the defendants devised a plan and used their positions to oust Inspeq in order to allow MFR to take over the inspection contracts for the Voucher Program. While we do not dispute that the behavior alleged to have caused the plaintiffs severe distress is extreme and intolerable, the pleadings do not establish that this behavior was reasonably calculated, by the defendants, to cause the plaintiffs emotional distress. Rather, the alleged conduct was greedy and self-centered. Although Inspeq and Zeigler were both negatively affected as a result, the perceived target as alleged by the pleadings was Inspeq not Zeigler. Accordingly, we find no error in the trial court’s dismissal of the plaintiffs claim on this issue for failure to state a cause of action.[6]
| ^Considering the foregoing, we affirm the trial court’s granting of defendants’ exceptions of no right of action, regarding the plaintiffs personal standing to sue for losses suffered by Inspeq, and no cause of action, regarding his emotional distress claim.
Inspeq ⅛ Claims
At this juncture, the only plaintiff left with viable claims is Inspeq. We now turn to the plaintiffs remaining six assignments of error, which relate only to Inspeq’s business claims, since his personal claims were dismissed. Inspeq challenges the trial court’s ruling based on its finding that: 1) its LUTPA claims were perempted; 2) it failed to state a cause of action for defamation; 8) its claim for conspiracy was prescribed; 4) it failed to state a cause of action for conspiracy; 5) it failed to state a cause of action for vicarious liability; and 6) it failed to state a cause of action for tortious interference of a contract or business.

Louisiana Unfair Trade Practices

First, Inspeq asserts that the trial court erred in finding that its LUTPA claims were preempted as of August 8, 2010. It contends that the time period to bring a LUTPA claim is prescriptive, not peremp-tive; therefore, the subsequent LUTPA claim can relate back to the original petition. It further asserts that accrual of a LUTPA claim requires an ascertainable loss and it did not suffer an ascertainable loss until their contract with HANO expired on November 3, 2009.
The prescriptive period for a private action pursuant to LUTPA is per-emptive. Morris v. Sears, Roebuck and Co., 99-2772, p. 4 (La.App. 4 Cir. 5/31/00), 765 So.2d 419, 422 (citing La. R.S. 51:1409(E)). Nothing can interfere with the running of a peremptive period. *452 Naghi v. Brener, 08-2527, p. 10 (La.6/26/09), 17 So.3d 919, 925 (citation omitted). A peremptive period cannot be renounced, interrupted or suspended. La. C.C. art. 3461.
Because the time period in which to bring a LUTPA claim is peremp-tive, the doctrine of contra non valentem does not apply. Id. (citing Dufour v. U.S. Home Corp., 581 So.2d 765, 767 (La.App. 4 Cir.1991); Canal Marine Supply, Inc. v. Outboard Marine Corp., 522 So.2d 1201, 1204 (La.App. 4 Cir.1988)). The continuing tort doctrine is a suspension principle based on contra non valentem; therefore, it cannot be used to suspend a preemptive period. Scott v. American Tobacco Co. Inc., 04-2095 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, 1280. Likewise, there is nothing to relate back to an amended petition filed after the expiration of the peremptive period. Naghi, 08-2527 at p. 11, 17 So.3d at 926.
The date of the alleged wrongful act begins the running of the prescription, even if the plaintiff was unaware of the act. Morris, 765 So.2d at 422. According to the language of the statute, plaintiffs have one year from the time of the “transaction or act which gave rise to this right of action” to sue under LUTPA. Morris, 99-2772 at p. 5, 765 So.2d at 422 (citing La. R.S. 51:1409 E). The act gives rise to a right of action under section 1409 when the plaintiff “suffer[s] any ascertainable loss of money or moveable property.” Id. (citing La. R.S. 51:1409 A).
113The trial court found that Inspeq’s LUTPA claims were discontinuous and abated before August 3, 2009, when Muhammad allegedly strung it along before his contract was set to expire. However, the trial court neglects Inspeq’s assertion that the contract was in fact extended until November 3, 2009, thus there was no ascertainable loss to give rise to a claim under LUTPA. The two actions that purportedly gave rise to Inspeq’s LUTPA claims are MFR’s no-bid takeover of the inspections for HANO’s Voucher Program, and MFR and HANO’s subsequent defamation of Inspeq.
Inspeq brought these claims in their first supplemental petition which was filed on September 9, 2010. Thus, any LUTPA claims must be based on conduct that occurred after September 9, 2009.
With regard to the no-bid takeover, Inspeq alleges that MFR used a position of authority to drive it out of business so that it could replace it and perform the inspection services for HANO’s Voucher Program, through a no-bid contract. Pursuant to this claim, In-speq asserts that its ascertained loss occurred sometime after its contract expired on November 3, 2009, and its claim was made on September 9, 2010. Therefore, it is not perempted as to claims occurring after September 9, 2009.
In reference to the defamation claim, Inspeq asserts that HANO and MFR made defamatory statements to Gilmore Kean and Edgemere sometime in January 2010. The statements were made in an effort to justify why MFR replaced Inspeq and began performing the inspection services for the Voucher Program through a 1 uno-bid contract, while simultaneously providing sole oversight over the payment for these services. This claim was also made timely as it purportedly occurred after September 9, 2009.
Accordingly, we find that the trial court erred in finding these timely LUTPA claims perempted.[7]

*453
Unaddressed LUTPA Exceptions

Since the trial court granted defendants’ exceptions in their entirety, it is necessary to address HANO’s exception of no cause of action, and MFR’s exception of no right of action, although they were not orally addressed by the trial court.

HANO’s No Cause of Action Exception

With respect to HANO’s no cause of action claim, Louisiana Revised Statutes 51:1405(A) provides that “[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” Levine v. First Nat. Bank of Commerce, 06-394, p. 20 (La.12/15/06), 948 So.2d 1051, 1065-66. This legislation is broadly and subjectively stated and does not specify particular violations. Id. Rather, what constitutes an unfair trade practice is determined by the courts on a case-by-case basis. Id. (citing Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1 Cir.1991), writ denied, 582 So.2d 1311 (1991)). “[A] practice is unfair when it offends established public Impolicy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious.” Id. (citing Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La.App. 1 Cir.1984)). Further, La. R.S. 51:1409 confers a right of private action on any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal from unlawful trade practices.
Since MFR was allegedly managing the Voucher Program, the assertion that MFR used its position of authority to take over the Voucher Program inspection contract, which once belonged to Inspeq establishes an unfair trade practice claim. The subsequent defamation purportedly occurred in an effort to deceive Gilmore Kean and Edgemere and justify this unscrupulous behavior. Inspeq has also asserted that the defendants’ conduct has caused an economic loss. In particular, it asserts that it lost its relationship with HANO, an existing contract in Las Vegas, and future business opportunities in other states.
Defendants argue that Inspeq admitted that it voluntarily decided not to bid on the new request for proposal contract, thus there could be no loss of profit for contract it refused to bid on. However, the real claim, as asserted by Inspeq, came when its three-month contract extension expired and MFR entered into the no-bid contract.
Accepting these allegations as true, we find that Inspeq has descriptively set forth a LUTPA cause of action arising out of unfair and deceptive trade practices.
| vjMFR’s No Right of Action Exception
In reference to MFR’s exception of no right of action, the Louisiana Supreme Court has recently clarified that any person, not just a competitor or consumer, has standing to sue under LUTPA. “LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person’s use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any.trade or commerce.” Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 09-1633, p. 6 (La.4/23/10), 35 So.3d 1053, 1057.
Inspeq has alleged a monetary loss as a result of defendants’ unfair trade practices. Thus, it has standing to sue, and the trial court erred in granting *454 MFR’s exception of no right of action. Considering the foregoing, we reverse the trial court’s ruling to the extent that it dismissed Inspeq’s viable LUTPA claims against MFR and HANO.

Defamation

The second challenged ruling of the trial court involves Inspeq’s defamation claim. It asserts that the trial court erroneously granted the defendants’ peremptory exception of no cause of action for defamation. It contends that the trial court mistakenly failed to recognize that the defendants were responsible for the publication of the false statements to Gilmore Kean, thus they are responsible for the re-publication in the operational assessment of HANO.
| i7“To prevail on a claim of defamation, plaintiff has the burden of proving by a preponderance of the evidence five essential elements: defamatory words, publication, falsity, malice and resulting injury. If even one of these elements is absent, the cause of action fails.” Sommer v. State, Dept. of Transp. and Dev., 97-1929, p. 25 (La.App. 4 Cir. 3/29/00), 758 So.2d 923, 939, writ denied, 00-1759 (La.10/27/00), 772 So.2d 122.
Defamatory words are those which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him. Sommer, 97-1929, p. 26, 758 So.2d at 939. To be actionable, the words must be communicated or published to someone other than the plaintiff. Id. Words that expressly or implicitly accuse another of criminal conduct or that, by their nature, tend to injure one’s personal or professional reputation are considered defamatory per se. Id. If the plaintiff proves publication of defamatory per se words, the elements of falsity, injury and malice are presumed, although they may be rebutted by the defendant. Id. (citing Arledge v. Hendricks, 30,0588, pp. 3-4 (La.App. 2 Cir. 6/26/98), 715 So.2d 135, 138). To rebut this presumption, defendants have the burden of proving a reasonable belief in the truth of the statements. See Sommer, 97-1929, p. 29, 758 So.2d at 940.
Inspeq’s recast petition asserts specific facts which allege that in January of 2010, defendants HANO, through unidentified employees, and MFR, through Edward Blaylock, purposely published to Steve Fulton, of Edgemere, false information regarding its failure to fulfill its contractual duties, which was later 11Rrepublished in the operational assessment. Inspeq further asserts that it lost an existing contract, as well as the opportunity for consideration for future contracts.
Because this information calls In-speq’s ability to conduct business into question, it would naturally injure its business reputation. Thus, the statements are per se defamatory. Consequently, upon proof of publication, the elements of malice, falsity, and injury can be presumed. Kennedy v. Sheriff of East Baton Rouge, 05-1418, p. 5 (La.7/10/06), 935 So.2d 669, 675.
When ruling that Inspeq had no cause of action in defamation, the trial court noted that its defamation claims were unsupported because none of the defendants actually published the defamatory statements made in the operational assessment. However, publication refers to any non-privileged communication of defamatory words, written or oral, and it renders a defendant liable “for all republication that is the natural and probable consequence of the author’s act.” Landrum v. Board of Commissioners of the Orleans Levee District, 95-1591, p. 11 (La.App. 4 Cir. 11/27/96), 685 So.2d 382, 390 (citing Martin v. Lincoln General Hospital, 588 So.2d *455 1329, 1338 (La.App. 2 Cir.1991)). The publication in the operational assessment was a republication of the defendants’ original alleged defamatory statements. Thus, the trial court erred in finding that Inspeq failed to state a cause of action in defamation.
The defendant, MFR, asserts that these statements were subject to a qualified privilege. A conditional or qualified privilege exists “if the communication is made (a) in good faith, (b) on any subject-matter in which the person 119communicating has an interest or in reference to which he has a duty, [and] (c) to a person having a corresponding interest or duty.” Elmer v. Coplin, 485 So.2d 171, 176 (La.App. 2 Cir.1986). The conditional or qualified privilege exists in cases like this to allow “full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate.” Id.
Since Inspeq asserts that the statements were defamatory words designed to harm its reputation, he is alleging bad faith on the part of the defendants. Accepting these assertions as true, Inspeq has adequately stated a cause of action for defamation.

Unaddressed Defamation Exceptions

In order to determine whether Inspeq’s defamation claim will be maintained, we must now consider HANO’s exception of prescription and MFR’s official immunity claims on this issue, which were not considered by the trial court.

HANO’s Exception of Prescription

We will first address HANO’s prescription exception.
Defamation sounds in tort and therefore is subject to the one-year prescriptive period for delictual actions set forth in La. C.C. art. 3492. Farber v. Bobear, 10-985, pp. 11-12 (La.App. 4 Cir. 1/19/11), 56 So.3d 1061, 1069 (citation omitted). Under Article 3492, prescription commences to run from the day injury or damage is sustained. Id.
UoAs already discussed, Inspeq alleges that the defendants’ defamed it sometime in January of 2010, and it incurred damages after the defamatory statements were republished on February 17, 2010. Inspeq filed its defamation claims on August 3, 2010, in the original suit; therefore, this claim is not prescribed.

MFR’s Federal Official Immunity Claim

Next, we will address MFR’s claim of federal official immunity.
Federal officials have long enjoyed immunity from suits based on state-law torts when their conduct was “within the scope of their official duties and ... discretionary in nature.” Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc., 481 F.3d 265, 269-70 (5th Cir.2007) (citing Westfall v. Erwin, 484 U.S. 292, 297-98, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988); Evans v. Wright, 582 F.2d 20, 21 (5th Cir.1978)). The application of this law, referred to as the Westfall test, to federal officials was superseded by Congress’s passage in 1988 of the Federal Employees Liability Reform and Tort Compensation Act, also known as the Westfall Act, which eliminated the requirement that the acts be discretionary. Id. The Westfall test, which is conditioned upon discretionary acts, remains the framework for determining when non-governmental persons or entities are entitled to the same immunity. Id. (emphasis added).
Inspeq contends that MFR, a private accounting firm, has no substantial defense of official immunity. It argues that MFR *456 was not performing an official governmental function.
|21In the order remanding the case back to state court, the federal district court agreed. It acknowledged that the [federal immunity argument] was “too attenuated to establish federal jurisdiction.” It observed that “MFR was a subcontractor for HANO, a Louisiana entity, and, even though it was overseeing a federally-funded program, it had no contractual relationship with the federal government and was not acting under a federal officer.” Since MFR was not performing a federal governmental function, we find that it does not have an official immunity defense.

Conspiracy

The trial court’s third and fourth rulings are related to Inspeq’s conspiracy claim. Inspeq asserts that the trial court erred in finding that this claim was prescribed, and in further finding that it did not state a cause of action for civil conspiracy because it failed to plead the existence of conspiracy based on an underlying intentional tort.

No Cause of Action for Conspiracy

We will review the trial court’s fourth ruling first, and determine whether Inspeq stated a cause of action in conspiracy.
In order to recover under a conspiracy theory, a plaintiff must allege and prove that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiffs injury, and there was an agreement as to the intended outcome or result. Crutcher-Tufts Res., Inc. v. Tufts, 07-1556, pp. 3-4 (La.App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094, writ denied, 2008-2677 (La.1/16/09), 998 So.2d 105 (citation omitted).
|22In its recast petition, Inspeq asserts that the defendants, MFR, Dwayne Muhammad, and Rochelle Jones made an agreement to use their inside positions of authority to allow MFR to takeover the inspection services for HANO’s Voucher Program that once belonged to Inspeq. He further asserts that the defamatory statements were made in furtherance of their agreement. Thus, the pleadings assert that there was an agreement by the parties, HANO and MFR, through their agents, to commit a LUTPA violation and defamation; these acts were actually committed to accomplish its takeover objective; and the parties agreed to this outcome as they all profited from the arrangement. After considering the pleadings on their face, we find no bar to the conspiracy action.

Prescription

We will now address the prescription exception. The trial court’s holding with respect to the prescription issue was twofold. The first involves prescription of the entire claim, and the second involves prescription of the claim as it relates to the individual defendants, Muhammad, Jones, and Blaylock.
The court noted that the basis for the entire conspiracy claim was Jones and Muhammad’s secreted marriage, and Inspeq learned of that relationship in August of 2009. The court then concluded that since the claim was not asserted until September 9, 2010, with the filing of the supplemental petition, the claim was prescribed. We disagree.
The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law. Ames v. Ohle, 11-1540 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 393, decision clarified on reh’g (July 11, 2012), reh’g denied (July 11, 2012), writ denied, 12-1832 (La.11/9/12), 100 So.3d 837 (citations omitted). The actionable element of a conspiracy claim is not the conspiracy itself but *457 rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part. Id. (citation omitted).
As discussed above, Inspeq has alleged underlying torts concerning a LUTPA violation, subject to a one-year preemptive period, and a defamation claim subject to a one-year prescriptive period. We have already found that the underlying LUTPA and defamation claims are not perempted or prescribed. Likewise, neither is the correlating conspiracy claim.
Accepting all of the foregoing allegations as true, we find that Inspeq has stated a sustainable cause of action for conspiracy against HANO and MFR, and it has not prescribed. As such, the trial court’s ruling is reversed.
In relation to the individual conspiracy claims, the trial court found that the conspiracy claims were not asserted against the individual defendants until March 23, 2011, with the filing of the second supplemental and amending petition. Because the amendments could not relate back, the individual claims were perempt-ed. We agree.
In Marsh Engineering, Inc. v. Parker, 04-509, pp. 8-9 (La.App. 3 Cir. 9/29/04), 883 So.2d 1119, 1125, writ denied, 04-2669 (La.1/28/05), 893 So.2d 73, the Third Circuit addressed this issue in a medical malpractice setting and held that a supplemental and amending petition adding new defendants in a legal ^malpractice action filed after the peremptive period had run did not relate back to the timely filed petition. See also Naghi, 08-2527 at pp. 10-11, 17 So.3d at 925-26 (citations omitted), where the Louisiana Supreme Court agreed that nothing could interfere with the running of a preemptive period, thus there is nothing to relate back to an amended petition filed after the expiration of the preemptive period.
Since the underlying LUTPA claim accrued on November 4, 2009, we find that the conspiracy claims brought against the individual defendants in March of 2011 are perempted. Thus the trial court did not err in dismissing Inspeq’s conspiracy claims against the individual defendants, and its ruling related to the individual defendants is affirmed.

Vicarious Liability

With respect to the trial court’s fifth ruling, Inspeq asserts that the trial court erred in granting a no cause of action exception as to its vicarious liability claim against HANO. The trial court found that Muhammad was not acting within the course and scope of his employment so as to make HANO vicariously liable to In-speq.
Civil Code Art. 2320 provides that “[mjasters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the function in which they are employed.”
This court set out the standard for determining whether an employer can be held vicariously liable in Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La.App. 4th Cir.1992), writ denied, 599 So.2d 316 (La.1992), as follows:
| gtjEmployers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. When determining whether the employer is liable for the acts of an employee, factors to be considered are whether the tortious act was: (1) primarily employment rooted; (2) reasonably incidental to the performance of the employee’s duties; (3) occurred on the employer’s premises; and (4) occurred during hours of employment. It is not necessary that all factors be met in order to find liability, and each case must be decided on its merits. *458 The fact that the primary motive of the employee is to benefit himself does not prevent the tortious act of the employee from being within the scope of the employment; if the purpose of serving the employer’s business actuates the employee to any appreciable extent, the employer is liable.
Id. at 573 (citations omitted).
The following test was also applied in Samuels:
If the tortious conduct of the employee is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest, it can then be regarded as within the scope of the employer’s employment, so that the employer is liable in tort to third persons injured thereby.
Id. at 574, quoting Turner v. State, 494 So.2d 1292 (La.App. 2 Cir.1986).
In our de novo review, we note that Inspeq averred in his recast petition both that Muhammad was acting in the course and scope of his employment in his interactions regarding Inspeq and MFR, and that he used his authority to sabotage Inspeq in his efforts to assist MFR in taking over Inspeq’s inspection contract with HANO.
Utilizing the criteria for determining an exception of no cause of action, we find that accepting that allegation as true, we find that Inspeq has stated a sufficient cause of action to defeat the exception. With the evidence admissible under these pleadings, Inspeq may attempt to prove certain facts relating to whether Muhammad’s conduct was primarily employment rooted, and was | mreasonably incidental to the performance of his duties, whether it occurred on HANO’s premises during the hours of employment; and if the purpose of serving HANO’s business motivated the employee to any appreciable extent. While pleading more facts would surely clarify the situation for the court, it is not required to defeat this exception. Based on the facts which were alleged, Inspeq has stated a cause of action against HANO to make it liable for the actions of its employee. Whether the “course and scope of employment” alleged by Inspeq is such as to render HANO liable is a matter for trial on the merits and Inspeq is not obliged to plead all the facts which it intends to prove at trial. We find no insuperable bar on the face of the petition to this action.

Tortious Interference Claims

Relative to the trial court’s sixth ruling, Inspeq asserts that the trial court erred in finding that he had no cause of action for his tortious interference claims. However, the transcript reflects that the trial court actually ruled that Inspeq’s tortious interference claims were prescribed. On appeal, Inspeq does not assign the court’s prescription ruling as error, thus there is no issue before this Court concerning the correctness of that ruling. As such, we pretermit review of the no cause of action assignment of error because the dismissal of this claim is supported on prescription grounds, which went uncontested.

CONCLUSION

Considering the foregoing, we affirm the trial court’s rulings dismissing the plaintiffs personal claims, as well as his claim for tortious interference on behalf 127of In-speq. We reverse the trial court’s judgment granting all of the defendants, HANO, Dwayne Muhammad, National Union Insurance Company, HANO Authority Insurance Group, MFR, Rochelle Jones, and Everett Blaylock’s, exceptions and dis *459 missing Inspeq’s LUTPA, defamation, conspiracy, and vicarious liability claims. We further remand for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED

. The plaintiff filed several supplements to his original petition. In response, the defendants filed numerous exceptions. As a result, the judge requested that the plaintiff file a recast petition to include all causes of action so the defendants could file exceptions to the recast petition to include any remaining exceptions.

. Rochelle Jones, Everett Blaylock, and Dwayne Muhammad were named individually.

. Although the plaintiff omitted this claim in his recast petition, it was included in a preceding petition. The trial court addressed this claim in his ruling and the plaintiff raised it on appeal.

. The other claims were filed on behalf of the plaintiff personally and in his representative capacity for Inspeq.

. In plaintiff's ninth assignment of error, he asserts that the trial court erred in granting *450 the entirety of defendant’s exceptions while leaving several unaddressed. He discusses specific exceptions that were not addressed when the trial court orally expressed his reasons for judgment. Because the unaddressed exceptions are discussed as necessary within the other assignments of error, there is no need to discuss this assignment separately.

. Considering our affirmation of the ruling on this issue, we pretermit discussion of HANO’s unaddressed exception of no right of action.

. Notably, the plaintiff made two additional LUTPA claims in its recast petition filed on *453 November 18, 2011. The first involved Muhammad's purposeful failure to pay invoices submitted by Inspeq in July of 2009. The second concerned MFR’s failure to do the same in September and November of 2009. Since those claims cannot relate back, they are perempted.