770 So.2d 879 (2000)
James GAUBERT, Jr., Personally and as Tutor of the Minor Child Jordan Gaubert and Jeanie Gaubert
v.
TOYOTA MOTOR SALES U.S.A., INC., Coleman Oldsmobile, Inc. d/b/a Coleman Toyota, LA Farm Bureau Casualty Ins. Co., Asucena Mayra Chavez, American Bankers Ins. Co. and Barber Brothers Contracting Company, L.L.C.
No. 99 CA 2569.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
*880 Bryan D. Magbee, Baton Rouge, Hugh Exnicios, Metairie, for Plaintiff/Appellant, James Gaubert, Jr., Jordan Gaubert, Jeanie Gaubert.
Keith L. Richardson, Glen Scott Love, Baton Rouge, for Defendant/Appellee, La. Farm Bureau Casualty Ins. Co.
Before: CARTER, C.J., WEIMER, and KLINE,[1] JJ.
CARTER, C.J.
James Gaubert, Jr., appeals the granting of a motion for summary judgment filed by his uninsured motorist carrier, Farm Bureau Casualty Insurance Company (Farm Bureau), which dismissed it as a defendant in this matter.

*881 FACTS
Five-month old Jordan Gaubert was injured in an automobile accident on March 8, 1997. Jordan sustained injuries when the vehicle driven by his mother, Jeanie Gaubert, collided with a vehicle in front of her as they traveled through a construction zone on Interstate 10 in West Baton Rouge Parish. As a result of the collision, the front passenger air bag inflated, causing injuries to Jordan, who was in an infant seat secured on the front passenger seat of the vehicle.
Following the accident, James Gaubert, Jr., made a claim individually and on behalf of his minor son, Jordan, against Farm Bureau. An agreement was reached to settle the claim for $20,426.11. The settlement terms are contained in the Parent's Receipt, Release and Indemnity Agreement executed by Mr. Gaubert on January 12, 1997. The trial court in "Tutorship of Jordan Gaubert" Docket No. 16191, Seventeenth Judicial District Court Parish of Lafourche, State of Louisiana, approved this settlement.
On March 6, 1998, Mr. Gaubert filed the present suit individually, and on behalf of his minor son, Jordan, against a number of defendants, including Toyota Motor Sales, USA, Inc., Asucena Chavez, Barber Brothers Contracting Company, LLC, and Farm Bureau. Farm Bureau was named as a defendant in its capacity as the UM carrier of the Gauberts.
Farm Bureau filed a motion for summary judgment on the basis that the January 12, 1997 release was a full release, and Farm Bureau has no liability to the Gauberts as a matter of law. The trial court granted Farm Bureau's motion for summary judgment. Mr. Gaubert appeals the judgment of the trial court contending the release agreement only applied to Farm Bureau in its capacity as a liability carrier, not as a UM provider.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32.
The release agreement executed by Mr. Gaubert is a transaction or compromise, which is defined under LSA-C.C. art. 3071 as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." The codal provisions further provide that a compromise is a written contract. LSA-C.C. art. 3071. It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. It also follows that the compromise instrument is governed by the same general rules of construction applicable to contracts. Brown v. Drillers, 93-1019, p. 7 (La.1/14/94), 630 So.2d 741, 748.
Louisiana Civil Code article 2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Brown, 630 So.2d at 748.
*882 A special exception to the extrinsic evidence rule for compromise agreements was crafted by the Louisiana Supreme Court in Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961). Moak has been cited for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following Moak, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under the jurisprudential rule of Moak, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal. See Brown, 630 So.2d at 749.
However, this jurisprudential rule has been tempered by the courts by recognizing that absent some substantial evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Utilizing a case-by-case factual analysis, courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, courts applying LSA-C.C. art. 2046's general rule of construction have not hesitated to confine their analysis to the four corners of the instrument. When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law, and thus summary judgment is appropriate. Brown, 630 So.2d at 749-750.
The release agreement between Mr. Gaubert and Farm Bureau states in pertinent part:
Appearer, James Gaubert, Jr., further declared that for and in consideration of the payment to him, individually and in his capacity as administrator of the minor child, by Louisiana Farm Bureau Casualty Insurance Company the sum of TWENTY THOUSAND FOUR HUNDRED TWENTY SIX AND 11/100 ($20,426.11) DOLLARS, receipt of which is hereby acknowledged for the use and benefit of the minor child, said payment being for injuries and damages sustained by said minor child, appearer does hereby release, acquit and forever discharge Louisiana Farm Bureau Casualty Insurance Company and Jeanie Gaubert from any and all further liability for personal injuries, medical expenses, disfigurement, property damage, loss of earnings, loss of earning capacity, costs and/or other expenses of whatever nature incurred herein, loss of consortium, service and society, either by appearer or the minor child as the result of an accident which occurred on March 8, 1997, in the Parish of West Baton Rouge, when said minor child was injured and appearer does individually and for and on behalf of said minor child forever release, acquit, discharge and covenant to hold harmless Louisiana Farm Bureau Casualty Insurance Company and Jeanie Gaubert and any of their employees, officers, directors, agents or members, from any responsibility herein. (Emphasis ours.)
Mr. Gaubert asserts that he released Farm Bureau from liability for the accident only in its capacity as his liability insurer, not in its capacity as his UM carrier. Thus, Mr. Gaubert contends his claim against Farm Bureau as his UM carrier is reserved. The release agreement did not contain any reservation of rights clause whatsoever.
*883 Resolution of this matter turns on the interpretation of the release agreement executed by Mr. Gaubert. The phrase "any and all further liability" appears to be a clear statement that Farm Bureau will not have any further exposure to its insured arising from this accident. Two cases from the fourth circuit, Duet v. Lucky, 621 So.2d 168 (La.App. 4th Cir.1993), and Fascio v. Lee, 94-1149 (La.App. 4th Cir.2/23/95), 650 So.2d 1236 are instructive on this issue. In Duet, the plaintiff (Duet) sustained injuries while a passenger in a vehicle driven by Servat. Duet settled her claims against Servat and his insurer, State Farm. Later, Duet sued Lucky, the driver of the other vehicle involved in the accident, Lucky's insurer, and Allstate, Duet's UM insurer. Allstate filed a third-party demand against State Farm, alleging that State Farm provided the primary UM coverage for Servat's vehicle and that this coverage would prime the UM coverage provided by Allstate. State Farm asserted the release agreement executed by Duet barred any other claims against it and Servat arising from the accident. See Duet, 621 So.2d at 170.
The Duet court found the language of the settlement agreement before it evidenced the intent to release both Servat and State Farm from "any and all claims... known and unknown ... on account of all injuries, known and unknown ... from an accident which occurred on or about the 2nd day of July, [19]89 at or near the High Rise on 1-10." The Duet court found that the settlement agreement precluded the possibility that Duet intended to release State Farm only in its capacity as Servat's liability insurer. Duet 621 So.2d at 171.
Also in Fascio v. Lee, the Fascios were injured while passengers in a vehicle driven by Segue. Fascio sued Segue and her insurer, GEICO, as well as the driver and insurer of the other vehicle involved in the accident. The Fascios settled with GECO and signed a full release. The Fascios then filed an amended petition naming GEICO as a defendant in its capacity as their UM carrier. GEICO filed peremptory exceptions raising the objections of no cause of action and res judicata. The Fascios contended that they only released GEICO from liability for the accident in its capacity as Segue's liability carrier. Thus, their claims against GEICO in its capacity as their UM carrier were reserved. See Fascio, 650 So.2d at 1237.
The Fascio court found that the release the Fascios executed unequivocally demonstrated an agreement compromising all claims against GEICO and Segue and releasing them from liability. Fascio, 650 So.2d at 1238. The language contained in the Fascio release clearly evidenced an intent to release GEICO and Segue from "any and all claims," "of any kind or nature whatsoever," "known and unknown," arising out of the accident. Furthermore, the release agreement did not contain any reservation of rights against GEICO. Rather, the Fascio court found the settlement agreement expressly precluded the possibility that the plaintiffs intended to release GEICO only in its capacity as a liability insurer.
Mr. Gaubert argues that the use of the phrase "release ... from any and all further liability" is distinguishable from the language in the Duet and Fascio cases. We disagree. The phrase "any and all further liability" does not reflect any intention to release Farm Bureau only in its capacity as liability insurer, nor does it reflect an intention to reserve any rights against Farm Bureau in its capacity as UM insurer. The release does not distinguish any different capacity with respect to Farm Bureau, but rather uses the allencompassing phrase "any and all liability." To the contrary, the language of the release clearly and unambiguously releases Farm Bureau from all liability.
We find Mr. Gaubert's reliance on Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984) and Boudreaux v. Government Employees Insurance Company, 454 So.2d 135 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1245 (La.1985) to be *884 misplaced. In both Carona and Boudreaux, the plaintiffs sued their own UM insurers after settling with the tortfeasors and respective liability insurers. In those cases the UM carriers attempted to elude their liability to the plaintiffs by claiming that the settlement between the plaintiffs and the tortfeasors also precluded suit against them. These cases can be distinguished because they involved situations where the insurer issuing the UM policies was not the same insurer that was a party to the release agreement.
Mr. Gaubert also asserts that the case of Chabaud v. Sylvester, 98-2852 (La.2/5/99), 728 So.2d 851, allows the inference that if a release is not clear as to what capacity the insurer is released, then the release is deemed vague and the case must be remanded. We disagree. The facts of Chabaud are clearly distinguishable from the facts in the present matter. Chabaud involved a lawsuit where a plaintiff (Chabaud) sued a defendant (Sylvester) and her insurer (State Farm) for injuries arising from an automobile accident. Chabaud settled her claims against Sylvester and State Farm, and the following language was contained in the release:
THE FOREGOING payment is also received in full compromise and settlement of any and all claims that I have or may have against the said STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DANA SYLVESTER, and LEONARD D. McNEIL, ONLY under the policy of insurance issued to DANA SYLVESTER, whether under the liability, medical payments or any other feature of said policy as a result of the aforesaid accident.
I further reserve any and all rights against any and all other parties to this litigation.
Chabaud, 728 So.2d at 852.
Chabaud later amended her petition to add State Farm, her own UM carrier, as a defendant. State Farm objected raising the peremptory exception of res judicata based on the prior settlement agreement. However, the supreme court found the language of the settlement agreement to be ambiguous, and remanded the case for the taking of parole evidence on what was Chabaud's intent. Chabaud, 728 So.2d at 852-53.
Chabaud differs from the present case in two respects. First, there was no reservation of rights for any other claims the plaintiff may have, which could be construed as an ambiguity in the nature of the liability that was being released. Second, Mr. Gaubert is the insured under both liability and UM provisions of his Farm Bureau policy. In Chabaud, although the court was dealing with the same insurance company, there were two distinct policies written with two different people at issue. Accordingly, we find Chabaud inapplicable to the present case.
Furthermore, although Mr. Gaubert asserted the scope of the release did not encompass any claims against Farm Bureau as his UM carrier, there was no substantiating evidence filed into the record, such as an affidavit by Mr. Gaubert establishing a material issue of fact as to Mr. Gaubert's mistake as to what he was signing or that he did not fully understand the nature of his rights being waived. Such substantiating evidence is required in order to place the intent of the releasor at issue. See Brown, 630 So.2d at 749.
Compromises are favored in the law, and the burden of proving the invalidity of a compromise is on the party attacking the agreement. Duet, 621 So.2d at 172. In the present case, Mr. Gaubert failed to introduce any evidence whatsoever to support his contention that his release of Farm Bureau from any and all liability did not include Farm Bureau's liability as his UM insurer. Accordingly, we find that the trial court properly granted the motion for summary judgment.

CONCLUSION
The release signed by Mr. Gaubert clearly and unambiguously released Farm *885 Bureau from any and all liability, with no reservation of rights against Farm Bureau as a UM insurer. As a matter of law, Mr. Gaubert can no longer bring any claims against Farm Bureau arising out of the March 8, 1997 accident. All costs of this appeal are assessed against James Gaubert, Jr.
AFFIRMED.
NOTES
[1] Hon. William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.