836 So.2d 424 (2002)
Joseph Paul WILLARD
v.
R & B FALCON DRILLING USA, INC.
No. 2001 CA 2334.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
*425 Barry A. Roach, Lake Charles, for Plaintiff-Appellant Joseph Paul Willard.
Barry J. Boudreaux, Houma, for Defendant-Appellee R & B Falcon Drilling USA, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
Plaintiff appeals devolutively from a trial court judgment ordering him to execute a *426 general release in favor of defendant and to conclude the matter in accordance with the terms and conditions of the settlement agreement previously reached by the parties. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 12, 1998, plaintiff, Joseph Paul Willard, was injured while employed as a Jones Act seaman by R & B Falcon Drilling USA, Inc. Mr. Willard subsequently filed a petition for damages against Falcon pursuant to the Jones Act and general maritime law. In an effort to resolve their differences, the parties engaged in mediation. On January 9, 2001, the parties reached a compromise agreement wherein Mr. Willard and Falcon agreed to settle the case for $320,000.00. In a letter dated January 9, 2001, counsel for Mr. Willard memorialized the essential elements of the settlement agreement. The letter was signed by counsel for Falcon on January 10, 2001, and returned the same day to opposing counsel. Thereafter, counsel for Falcon prepared a general release, receipt, and indemnity agreement that Mr. Willard would be required to execute at the February 7, 2001 settlement conference. The general release, which released all of Mr. Willard's claims and causes of action against all persons arising out of the accident of October 12, 1998, was forwarded to Mr. Willard's counsel on February 5, 2001.
Shortly before the February 7 settlement conference, counsel for Mr. Willard indicated that he wanted to reserve his client's rights against Falcon's physician, Dr. William St. Martin, under a theory of medical malpractice for allegedly failing to diagnose a back condition during Mr. Willard's pre-employment physical examination. He insisted that all that was contemplated in the settlement agreement was a resolution of Mr. Willard's case against Falcon, in its entirety, for $320,000.00. To the contrary, counsel for Falcon maintained that the settlement agreement contemplated a settlement of all of Mr. Willard's claims against all potential parties.
When it was clear that no compromise was imminent with regard to the language to be used in the release, both parties filed motions with the trial court to enforce the settlement. In addition to requesting that the settlement agreement be enforced, Mr. Willard requested that Falcon be taxed with penalties and attorney fees pursuant to La. R.S. 22:1220. Both motions were heard by the trial court on March 13, 2001, at which time the parties agreed that the January 9, 2001 settlement agreement was a binding agreement and should be enforced. Thus, the only issue before the court was how to enforce the agreement; i.e., should the parties sign a general release or a restrictive release, reserving a right of action against Dr. St. Martin. At the conclusion of the hearing, the court ruled in favor of Falcon. In an order dated March 14, 2001, the trial court ordered Mr. Willard to "execute a general release to be prepared by R & B Falcon Drilling USA, Inc., within thirty days of the hearing of March 13, 2001, and to execute whatever documents are necessary to conclude the matter in accordance with the terms and conditions of the said settlement."
According to the record, a settlement conference was held on March 22, 2001, at which time Mr. Willard signed the general receipt, release, and indemnity agreement prepared by Falcon and accepted a check from Falcon in the amount of $320,000.00. Other settlement documents were executed by the parties, along with a "Motion And Order To Dismiss With Prejudice," which was subsequently signed by the trial *427 court on March 28, 2001. Subsequently, on May 11, 2001, Mr. Willard filed a motion for devolutive appeal, challenging the order signed by the trial court on March 14, 2001.
Thereafter, on June 15, 2001, Falcon moved the trial court to dismiss Mr. Willard's appeal, alleging that he had "no right of appeal due to his actions of executing a receipt and release, executing a motion and order to dismiss with prejudice and accepting and negotiating a check for the agreed upon amount of the settlement between these parties." A hearing on the motion to dismiss the appeal was held on August 13, 2001, at which time the trial court denied the motion. A judgment denying the motion to dismiss the appeal was signed on September 11, 2001.
In the instant appeal, Mr. Willard assigns the following specifications of error:
1. [T]he trial court was clearly wrong in allowing witnesses to testify outside the four corners of the January 9, 2001 settlement agreement regarding the intentions of the parties confecting the settlement and what is customary within the practice of maritime law.
2. [T]he trial court was clearly wrong in disregarding the "four corners" rule, considering the intention of the parties and relying on custom within the practice of maritime law in ordering Willard to execute a general release despite the binding settlement agreement confected on January 9, 2001.
3. [T]he trial court was clearly wrong in not awarding punitive damages pursuant to Louisiana Revised Statute Title 22, Section 1220 based on the failure of Falcon to pay the agreed settlement within 30 days after the agreement was reduced to writing on January 9, 2001.

INTERPRETATION OF SETTLEMENT AGREEMENT
In his first two assignments of error, Mr. Willard asserts the trial court "violated the `four corners' rule by looking beyond the January 9, 2001 settlement agreement for guidance as to the intent of the parties and what is customary in the practice of maritime law." Mr. Willard suggests that the January 9, 2001 transaction and compromise was clear and explicit, thus requiring no further interpretation of the agreement by the trial court to determine the parties' intent. Conversely, Falcon contends there was a dispute between the parties as to which matters were intended to be settled by the compromise agreement, thereby making it necessary for the trial court to go beyond the four corners of the agreement to determine the parties' intent.
A transaction or compromise is "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." La. Civ. Code art. 3071. A compromise instrument is the law between the parties and must be interpreted according to the intent of the parties to the agreement. Smith v. Walker, 96-2813, p. 9 (La.App. 1 Cir. 2/20/98), 708 So.2d 797, 802, writ denied, 98-0757 (La.5/1/98), 718 So.2d 418. Thus, it follows that the compromise instrument is governed by the same general rules of construction applicable to contracts. Gaubert v. Toyota Motor Sales U.S.A., Inc., 99-2569, p. 3 (La.App. 1 Cir. 11/3/00), 770 So.2d 879, 881.
Louisiana Civil Code article 2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract *428 are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Because a compromise extends only to those matters the parties intended to settle, the cope of the transaction cannot be extended by implication. La. Civ.Code art. 3073. In determining those matters the parties intended to settle, we must consider the contract as a whole and in light of attending events and circumstances. Ortego v. State, Department of Transportation and Development, 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363.
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Gaubert, 99-2569 at 3, 770 So.2d at 881. However, when the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. Commercial Properties Development Corporation v. State Teachers Retirement System, XXXX-XXXX, p. 7 (La.App. 1 Cir. 3/28/01), 808 So.2d 534, 540. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. Civ.Code art. 2053. Whether a contract is ambiguous is a question of law. Hampton v. Hampton, Inc., 97-1779, p. 7 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189.
The settlement agreement at issue in the instant case is a January 9, 2001 letter from counsel for Mr. Willard to counsel for Falcon. The letter contains the following language:
This letter will confirm our agreement to settle Mr. Willard's case against R & B Falcon, in its entirety, for $320,000.00, with this amount being paid within thirty days. It is my understanding that Mr. Willard will be responsible for medical expenses incurred at Charity Hospital in New Orleans related to his back injury. It is also my understanding that R & B Falcon will pay for all court costs relating to this matter.
If this is your understanding of our agreement, please place your signature on the line provided below and fax this letter back to me at your earliest convenience.
The letter was signed by counsel for Falcon on January 10, 2001, and returned the same day to opposing counsel.
At the March 13, 2001 hearing before the trial court, counsel for Falcon offered Joseph J. Weigand as an expert in the field of personal injury maritime law. The court accepted Mr. Weigand as an expert and heard testimony from him concerning customs and usages in general maritime law. Based on his experience in handling maritime cases, Mr. Weigand opined that the January 9, 2001 agreement between the parties clearly contemplated a general release of all potential defendants. Mr. Weigand acknowledged that to reach this conclusion, you would have to go outside the four corners of the document and consider what is usual and customary in the maritime field.
After hearing from Mr. Weigand and considering the briefs submitted by the parties, the trial court found in favor of Falcon, ordering Mr. Willard to execute a general release. The court noted as follows:
I believe that the letter is clear that a settlement was reached. I also believe *429 that the standards within the practice of law in the maritime industry is as related by Mr. Weigand that a general release follows the confirmation of a settlement. Unless the parties had made a reservation of rights against a party, there would be no anticipated reservation of rights and the general release form would be appropriate.
... I will enforce the settlement under the terms of a general release, as I believe would be standard in the industry and as would have been recognized by the parties on January the 9th, 2001.
When considering the language "This letter will confirm our agreement to settle Mr. Willard's case against R & B Falcon, in its entirety, for $320,000.00" as is found in the January 9, 2001 letter, one could interpret the phrase "in its entirety" as all-inclusive language implying a general release of Falcon and all potential defendants. However, when considering the contract as a whole, and in light of attending events and circumstances, one could infer that the parties intended to only settle Mr. Willard's case as against Falcon. When, as here, the parties dispute exactly what claims were clearly contemplated to be covered by the settlement, the jurisprudential rule allowing consideration of parol evidence to determine the parties' intent is applicable. Accordingly, we find no manifest error in the trial court's decision to allow the introduction of parol evidence to clarify the ambiguity as to what the parties intended to include in the settlement. Moreover, we are satisfied, as was the trial court, that a general release of Falcon and all potential defendants was intended by the parties. Therefore, Mr. Willard's assignments of error regarding this issue are without merit.

PENALTIES PURSUANT TO LA. R.S. 22:1220
In his final assignment of error, Mr. Willard contends the trial court erred in not awarding punitive damages under La. R.S. 22:1220, based on Falcon's failure to pay the agreed settlement within thirty days after the agreement was reduced to writing on January 9, 2001.
Under La. R.S. 22:1220, an insurer has a duty of good faith and fair dealing toward its insured, including the duty to adjust claims fairly and promptly. The insured is entitled to recover any general and special damages and may recover penalties occasioned by the insurer's breach of these duties. La. R.S. 22:1220(B) and (C). Due to the penal nature of this statute, it must be strictly construed. Penalties and attorney fees will not be assessed against an insurer unless it is clearly shown that the insurer was, in fact, arbitrary, capricious, and without probable cause in refusing to pay. Block v. St. Paul Fire & Marine Ins. Co., 32,306, p. 7 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 751. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding that may not be disturbed unless manifestly erroneous. Wallace v. State Farm Mutual Automobile Insurance Company, 36,099, pp. 7-8 (La.App. 2 Cir. 6/14/02), 821 So.2d 704, 710.
In the instant case, the trial court found La. R.S. 22:1220 to be inapplicable, noting that "Falcon stood ready to tender the funds." Based on our review of the record, we are satisfied that Falcon was not arbitrary, capricious, or without probable cause in refusing to tender the settlement funds within the time allowed. Thus, the trial court did not err in denying Mr. Willard's request for penalties pursuant to La. R.S. 22:1220.

*430 CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs associated with this appeal are assessed against plaintiff-appellant, Joseph Paul Willard.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
In the majority opinion, it is found that the use of the phrase "in its entirety" makes the January 9, 2001 letter ambiguous, and thus warranted the acceptance of parol evidence by the trial court to determine the true intent of the parties to the agreement. I disagree with the finding of ambiguity by the majority. Specifically, the phrase at issue is found in the following sentence in the January 9, 2001 letter: "This letter will confirm our agreement to settle Mr. Willard's case against R & B Falcon, in its entirety, for $320,000.00, with this amount being paid within thirty days."
The majority construed the use of the phrase "in its entirety" as having two possible meanings in the context of the sentence just quoted: (1) that the phrase meant that Mr. Willard was releasing Falcon and all potential defendants; or (2) Mr. Willard only intended to release Falcon. The first reading of the phrase by the majority is clearly an unwarranted expansion of the plain meaning of the phrase in the context of the sentence in which it is found. In particular, it is noted that no where in the sentence containing the phrase, nor in the entire letter, is any mention made of any other potential tortfeasors. Furthermore, Mr. Willard expressly stated that he was settling his case against R & B Falcon. He did not simply state that he was settling his case or claims related to the incident occurring on October 12, 1998, but he expressly limited the release to his "case against R & B Falcon."
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La. C.C. art. 1848.
In this case, the majority seeks to justify the decision to use parol evidence by interpreting the phrase "in its entirety" in isolation and not in the context of the sentence in which it is found and the document as a whole. Such an interpretation expressly contravenes rules of interpretation as delineated in the Civil Code. See La. C.C. art. 2050. Thus, I respectfully dissent from the majority opinion in this matter.