STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1544R

JASON MEADOWS, INDIVIDUALLY AND JASON MEADOWS ON
BEHALF OF SOUTHERN CROSS MARINE SERVICES, LLC

VERSUS

CHRISTY ADAMS

Judgment Rendered:   NOV 0 9 2020

* * * * * *

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2015-12840, Division "H"

Honorable Alan A. Zaunbrecher, Judge Presiding

* * * * * *

Jason R. Anders                     Counsel for Plaintiff/Appellant
Mandeville, Louisiana               Jason Meadows


David C. Spinner                    Counsel for Defendant/Appellee
Galen M. Hair                       Christy Adams
New Orleans, Louisiana

* * * * * *

BEFORE:  WHIPPLE, C.J., McCLENDON, AND HIGGINBOTHAM, JJ.

Whipple, C.J. concurs and assigns reasons.

**McCLENDON, J.**

Former husband and limited liability company (sometimes collectively "Plaintiffs") brought suit against former wife. Former wife filed a Motion to Enforce Settlement Agreement contending that Plaintiffs' claims were precluded by the terms of the Consent Judgment on Partition of Community Property previously executed in connection with the divorce proceedings of former husband and former wife. The trial court rendered judgment granting the Motion to Enforce Settlement Agreement, and dismissing Plaintiffs' claims with prejudice. Plaintiffs appealed. For the reasons set forth below, we affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Jason Meadows ("Meadows") and Christy Adams ("Adams") were married in 2011 and separated in 2014. Prior to, during, and after the parties' marriage, Meadows was the sole member of Southern Cross Marine Services, LLC ("Southern Cross"). During the parties' marriage, Adams was employed by Southern Cross for a brief period of time to assist in bookkeeping and administrative matters.

Adams initiated divorce proceedings on June 5, 2014 ("domestic proceedings").[1] Material to this appeal, the parties executed a Consent Judgment on Partition of Community Property ("Consent Judgment") on August 29, 2014. The Consent Judgment set forth terms under which the parties each received full ownership of certain property; agreed to indemnify the other from any and all debts associated with the property received in the partition; and, further agreed to hold the other harmless from responsibility for debts arising from the former community. Meadows received one hundred percent (100%) right, title, and interest in and to Southern Cross pursuant to the terms of the Consent Judgment.

On July 17, 2015, during the pendency of the domestic proceedings, Meadows and Southern Cross[2] filed a Petition for Damages naming Adams as defendant ("instant proceedings"). Plaintiffs alleged that during Adams' employment with Southern Cross,

---

[1] The domestic proceedings were captioned "Christy Adams, wife of Jason Meadows, versus Jason Meadows, Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana, Docket No. 2014-12593, Division H."

[2] We note Adams' argument that Southern Cross is not a party to these proceedings. This argument is considered and rejected for the reasons set forth below.

2

she failed to pay various creditors, dishonored contracts, incurred liability on behalf of the business, and misappropriated funds from Southern Cross for personal use. Meadows asserted claims in his individual capacity under LSA-C.C. art. 2354 for loss or damage caused by fraud or bad faith in the management of community property. Southern Cross asserted claims for conversion, unjust enrichment, and breach of fiduciary duty.

Adams answered the Petition for Damages. Adams asserted that she was only employed by Southern Cross for approximately three weeks and disputed the allegations of wrongdoing. More specifically, Adams denied incurring unauthorized debts; conceded that some of Southern Cross's bills were left unpaid, but maintained that was through no fault of her own; and admitted that she had taken funds from Southern Cross accounts, but explained that she had taken the funds to pay household bills which were community obligations. Adams further argued that any and all claims asserted by Plaintiffs were resolved and barred by the Consent Judgment.

The domestic proceedings and the instant proceedings were allotted to the same division of the trial court. During an October 11, 2016 hearing in the domestic proceedings, the parties announced their intent to resolve certain matters by stipulation. Accordingly, the trial court memorialized the terms agreed to at the October 11, 2016 hearing in a Stipulated Judgment executed on December 21, 2016, ("Stipulated Judgment"). The first two provisions of the Stipulated Judgment read as follows:

> 1. All open and/or pending contempt motions and sanctions motion filed by both parties are dismissed with prejudice, with each party to bear its own costs;
>
> 2. All outstanding issues in Judge Penzato's Division concerning pending matters between the parties are dismissed, with each party to bear its own costs.

On May 11, 2017, Plaintiffs filed a Motion for Contempt of Court ("Motion for Contempt") in the instant proceedings, asserting that Adams failed to comply with a trial court order to respond to Plaintiffs' discovery requests. On June 15, 2017, Adams filed a Motion to Dismiss with Prejudice ("Motion to Dismiss") seeking dismissal of Plaintiffs' claims. In support of her Motion to Dismiss, Adams attached the Consent

3

Judgment, portions of the transcript of the October 11, 2016 hearing, and the Stipulated Judgment. Adams, then unrepresented by counsel, failed to serve the Motion to Dismiss on counsel for Plaintiffs, and instead mailed a copy of the Motion to Dismiss to Meadows. Adams also failed to set the Motion to Dismiss for hearing. Plaintiffs filed an opposition to the Motion to Dismiss, arguing that the October 11, 2016 hearing and the resulting Stipulated Judgment concerned the domestic proceedings, and therefore had no effect on the instant proceedings. Although the Motion to Dismiss was not properly filed or served, the trial court permitted Adams to state her position "in the interest of justice" during a June 29, 2017 hearing on the Motion for Contempt. The Clerk of Court notified the parties by letter dated July 3, 2017, that the Motion to Dismiss had been denied.[3] The litigation continued.

On November 6, 2017, Adams filed a Peremptory Exception raising the Objections of No Cause of Action, No Right of Action, and Prescription, together with a Motion to Enforce Settlement Agreement ("Motion to Enforce Consent Judgment"). In the Motion to Enforce Consent Judgment, Adams argued that Plaintiffs were precluded from asserting the claims set forth in the Petition for Damages by the terms of the Consent Judgment. Plaintiffs opposed Adams' filings. Following a March 23, 2018 hearing, the trial court took the matter under advisement. On May 8, 2018, the trial court executed a written judgment granting the Motion to Enforce Consent Judgment and dismissing Plaintiffs' claims with prejudice.[4]

Plaintiffs filed a Motion for New Trial, which was denied without a hearing on May 29, 2018. Plaintiffs then filed a Petition for Devolutive Appeal on July 13, 2018. Adams filed a Motion to Dismiss Appeal with this court, which was referred to the panel considering the merits of the appeal by an interim order dated December 7, 2018. This court dismissed the appeal in **Meadows v. Adams**, 2018-1544 (La.App. 1 Cir. 8/7/19), 285 So.3d 1101, 1103. The Supreme Court reversed that decision in **Meadows v. Adams**, 2019-1724 (La. 1/22/20), 287 So.3d 718 (per curiam), and ordered "[t]he case

---

[3] The record reflects that the trial court wrote "denied" on Adams' Motion to Dismiss, dated it June 29, 2017, and placed the signature of the trial court below "denied." The minute entry of the hearing reflects only that the trial court considered Meadows' Motion for Contempt; no reference is made to the Motion to Dismiss.

[4] The trial court also issued written reasons for judgment.

4

is remanded to the court of appeal for consideration on the merits." **Meadows**, 287 So.3d at 720. We proceed accordingly.[5]

In this appeal, Plaintiffs challenge the trial court's judgment granting the Motion to Enforce Consent Judgment on four[6] grounds. Specifically, Plaintiffs argue:

1. The trial court had previously decided the question of whether the Consent Judgment precluded Plaintiffs' claims when it denied the Motion to Dismiss. The trial court therefore erred by not applying the law of the case doctrine.

2. The Consent Judgment is null due to fraud. Consequently, the trial court erred by enforcing the Consent Judgment.

3. Southern Cross was not a party to the Consent Judgment. The trial court thus erred by enforcing the Consent Judgment against Southern Cross.

4. The Consent Judgment reserved Plaintiffs' right to assert claims based on Adams' own acts. Accordingly, the trial court erred in ruling that the Consent Judgment precluded Plaintiffs' claims.

## DISCUSSION

Having thoroughly reviewed the Consent Judgment and the applicable law, we find that the trial court properly granted the Motion to Enforce Consent Judgment against Meadows, and therefore, properly dismissed Meadows' claims against Adams. However, the trial court erred in granting the Motion to Enforce Consent Judgment as to Southern Cross, and in dismissing the claims asserted by Southern Cross. Thus, for the reasons that follow, we affirm in part and reverse in part.

### Law of the Case Doctrine

Plaintiffs argue that the trial court erred by not applying the law of the case doctrine because the previous denial of the Motion to Dismiss formally adjudicated the issue of whether the Consent Judgment precluded the claims Plaintiffs assert in the instant proceedings. Plaintiffs conclude that the denial of the Motion to Dismiss became the law of the case when Adams did not seek appellate review. In response, Adams argues that the denial of the Motion to Dismiss was an interlocutory ruling to which the law of the case doctrine does not apply. Adams further contends that even if the law of

---

[5] We note the concerns raised in the concurring opinion. However, in light of the specific procedural history of this case, we address the merits of this matter pursuant to the Supreme Court's explicit order to do so.

[6] Plaintiffs' brief sets forth three assignments of error. The third assignment of error encompasses two distinct arguments. We address each argument separately for ease of discussion.

the case doctrine was applicable, the trial court did not abuse its discretion in choosing not to apply same. We agree.

The law of the case doctrine bars reconsideration of issues that were previously fully litigated. **Jeff Mercer, L.L.C. v. State, Dep't of Transp. & Dev.**, 2014-1751 (La.App. 1 Cir. 6/5/15), 174 So.3d 1180, 1185, writ denied, 2015-1624 (La. 10/30/15), 179 So.3d 618. It applies to those who were parties to the case when the former decision was rendered and to issues that were actually presented and decided by the appellate court. *Id.* The reasoning behind the law of the case doctrine is to avoid re-litigation of the same issue, to promote consistency of result in the same litigation, and to promote efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue. **Zanella's Wax Bar, LLC v. Trudy's Wax Bar, LLC**, 2019-0043 (La.App. 1 Cir. 11/7/19), 291 So.3d 693, 696, writ denied, 2019-01931 (La. 1/28/20), 291 So.3d 1052. The law of the case doctrine is not inflexible, but rather, permits courts to exercise discretion in its application. **Barringer v. Robertson**, 2015-0698 (La.App. 1 Cir. 12/2/15), 216 So.3d 919, 925, writ denied, 2016-0010 (La. 2/26/16), 187 So.3d 1004. It should not be applied where it would accomplish an obvious injustice or where the former decision was manifestly erroneous. **Mercer**, 174 So. 3d at 1186.

The law of the case doctrine does not apply to trial court rulings on interlocutory issues. **Land v. Vidrine**, 2010-1342 (La. 3/15/11), 62 So.3d 36, 42. Prior to final judgment, a trial judge may, at his discretion, change the substance or the result of interlocutory rulings. **Guidry v. USAgencies Cas. Ins. Co., Inc.**, 2016-0562 (La.App. 1 Cir. 2/16/17), 213 So.3d 406, 414, writ denied, 2017-0601 (La. 5/26/17), 221 So.3d 81. A judgment may be either interlocutory or final. A final judgment is one that determines the merits of a controversy in whole or in part. LSA-C.C.P. art. 1841. A judgment that does not determine the merits, but only preliminary matters in the course of the action, is an interlocutory judgment. LSA-C.C.P. art. 1841. Adams contends that the denial of the Motion to Dismiss was not a final judgment that determined the merits of the claims asserted by Plaintiffs, as it did not address any of the allegations set forth in the Petition for Damages, nor did it make a determination as

6

to liability and damages. Instead, Adams asserts that the denial of the Motion to Dismiss only determined the preliminary matter of whether the domestic proceedings resolved the instant proceedings. Having thoroughly considered the record before us, it is clear that the trial court's denial of the Motion to Dismiss in this case did not determine the merits of the controversy in whole or in part. The denial of the Motion to Dismiss is therefore properly characterized as an interlocutory judgment, and accordingly, is not subject to the law of the case doctrine. See **Land**, 62 So.3d at 4.

Further, application of the law of the case doctrine in this matter would result in an obvious injustice because the issues presented in the Motion to Enforce Consent Judgment were not previously fully litigated in connection with the Motion to Dismiss. The transcript of the June 29, 2017 hearing reflects that the arguments regarding the Motion to Dismiss focused on whether the Stipulated Judgment, reached in the domestic proceedings, resolved the instant proceedings, and not on whether the Consent Judgment precluded Plaintiffs from asserting their claims in the instant proceedings. The transcript also reveals that when Adams began explaining the Consent Judgment to the trial court, Meadows' counsel stated, "Judge, that's not raised in the pleadings. It's not here in the record. That's in the divorce proceedings." This is inconsistent with Meadows' argument on appeal that "Adams filed a Motion to Dismiss based on the resolution of the parties' matter in their divorce proceeding, specifically their execution of the [Consent Judgment]." In this matter, the determinative issue was not previously fully litigated, and application of the law of the case doctrine would therefore result in obvious injustice.

For these reasons, having thoroughly reviewed the record and considered the applicable law, we find that the law of the case doctrine does not apply to the trial court's denial of Adams' Motion to Dismiss. This assignment of error lacks merit.

**Nullity Due to Fraud**

In this assignment of error, Plaintiffs argue that the Consent Judgment is null due to fraud. Plaintiffs allege that Adams "misrepresented the facts and suppressed the truth in an effort to gain an unjust advantage in the community property proceedings," thereby vitiating Meadows' consent to the Consent Judgment. In answer to Plaintiffs'

7

arguments, Adams contends that Plaintiffs have failed to assert the relative nullity of the Consent Judgment by direct attack as required by the law. We agree.

A judgment may be either relatively or absolutely null. **Hebert v. Hebert**, 96-2155 (La.App. 1 Cir. 9/19/97), 700 So.2d 958, 959. A vice of form renders a judgment absolutely null, while a vice of substance renders a judgment relatively null. **Leonard v. Reeves**, 2011-1009 (La.App. 1 Cir. 1/12/12), 82 So.3d 1250, 1259. An exclusive list of the vices of form which render a judgment absolutely null is set forth in LSA-C.C.P. art. 2002.[7] Fraud or ill practices, the two vices of substance which render a judgment relatively null, are identified in LSA-C.C.P. art. 2004.[8] As the basis of the alleged nullity is fraud or ill practices, Plaintiffs effectively allege that the Consent Judgment is a relative nullity.

Louisiana Code of Civil Procedure article 2006 requires than an action to annul a judgment be brought in the trial court. Absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. **Hebert**, 700 So.2d at 960. However, relatively null judgments must be attacked directly and within the time limitation set forth in LSA-C.C.P. art. 2004. *Id.* A direct action for relative nullity based upon vice of substance (fraud or ill practice) should be instituted by petition, with citation and proper service of process, utilizing an ordinary proceeding. **Leonard**, 82 So.3d at 1260. A direct action can be brought by filing a separate proceeding or by the filing of a pleading in the same proceeding as that in which the offending judgment was rendered. **Roach v. Pearl**, 95-1573 (La.App. 1 Cir. 5/10/96), 673 So.2d 691, 694.

In **Smith v. LeBlanc**, 2006-0041 (La.App. 1 Cir. 8/15/07), 966 So.2d 66, the plaintiff filed suit alleging breach of fiduciary duty and seeking damages in a previous

---

[7] Louisiana Code of Civil Procedure article 2002 declares that those judgments are absolutely null which are rendered: (1) against an incompetent person not properly represented; (2) against a defendant who has not been served with process and who has not waived objection to jurisdiction, or against whom a valid final default judgment has not been taken; or, (3) by a court lacking subject matter jurisdiction over the suit. These grounds are exclusive. See **Webb v. Polk Chevrolet, Inc.**, 415 So.2d 402, 404 (La.App. 1 Cir. 1982). Meadows' petition does not allege any of these grounds.

[8] Louisiana Code of Civil Procedure article 2004 provides in full:

    A.  A final judgment obtained by fraud or ill practices may be annulled.

    B.  An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

    C.  The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.

interdiction proceeding. The defendants filed a peremptory exception raising the objection of res judicata, based on a judgment of homologation entered in the interdiction proceeding. The plaintiff opposed the exception of res judicata, and additionally, requested leave of court to file an amended petition to assert a claim for nullification of the homologation judgment. The trial court granted the defendants' exception of res judicata and denied the plaintiff's request for leave to amend the petition. This Court noted that "[t]he instant suit clearly is not one brought by [the plaintiff] for the express purpose of annulling the [homologation] judgment," and therefore, the appropriateness of the plaintiff's collateral attack on the validity of the homologation judgment depended on whether the homologation judgment was an absolute or relative nullity. *Id.* at 72. Having concluded that the basis of the alleged nullity was fraud or ill practices, this Court wrote, "[s]ince a final judgment obtained by fraud or ill practices is not an absolute nullity, [the plaintiff's] attack on the validity of the [homologation] judgment cannot be raised collaterally in her action for breach of fiduciary duty and damages." Accordingly, this Court affirmed the trial court's judgment. *Id.* at 76.[9]

In this matter, as in **Smith**, the basis of the alleged nullity of the Consent Judgment is fraud or ill practices. Plaintiffs were therefore required to pray for the nullity of the Consent Judgment directly, by means of a petition, within the time prescribed. However, the instant proceedings were clearly not instituted for the express purpose of annulling the Consent Judgment, and consequently constitute an impermissible collateral attack. Accordingly, Meadows may not collaterally attack the validity of the Consent Judgment in his action for fraud, bad faith, conversion, unjust enrichment, and breach of fiduciary duty. This assignment of error lacks merit.

---

[9] Similarly, in **Leman v. Leman**, 2009-2168 (La.App. 1 Cir. 5/7/10) 2010 WL 1838470 (unpublished), the parties executed a consent judgment partitioning their community property in connection with their divorce. Mrs. Leman subsequently filed a petition in the 24th JDC seeking damages, a writ of sequestration, and the nullification of a donation attached as an exhibit to the consent judgment on the basis of fraud or ill practices. The matter was transferred to the 22nd JDC and consolidated with the parties' divorce proceedings. Mr. Leman filed an exception of res judicata. The trial court sustained the exception of res judicata and dismissed Mrs. Leman's suit for damages, sequestration, and the nullification of the consent judgment, with prejudice. On appeal, this Court noted that Mrs. Leman had not instituted any action for the express purpose of annulling the consent judgment; rather, she sought to have the donation annulled. This Court ultimately held that the consent judgment was final and its provisions were res judicata regardless of the validity of the challenged donation. See **Leman v. Leman**, 2009-2158 at p. 4.

**Enforcement of the Consent Judgment against Southern Cross**

Plaintiffs argue that the trial court erred in finding that the Consent Judgment barred Southern Cross from asserting claims against Adams, because Southern Cross was not a party to the Consent Judgment. We agree.[10]

The Consent Judgment at issue herein is a compromise. A compromise made by one of the interested parties to a matter is not binding for the others. See LSA-C.C. art. 3075; **Garrison v. James Const. Grp., LLC**, 2014-0761 (La.App. 1 Cir. 5/6/15), 174 So.3d 15, 18, writ denied, 2015-1112 (La. 9/18/15), 178 So.3d 146. A limited liability company and its members are considered wholly separate persons under the law. See LSA-C.C. art. 24; **Ogea v. Merritt**, 2013-1085 (La. 12/10/13), 130 So.3d 888, 894-95; **Wilson v. Two SD, LLC**, 2015-0959 (La.App. 1 Cir. 12/23/15), 186 So.3d 103, 114. Meadows and Southern Cross are therefore wholly separate entities, regardless of the fact that Meadows is the sole member of Southern Cross. As Southern Cross was not a party to the Consent Judgment, said Consent Judgment is not binding for Southern Cross. See LSA-C.C. art. 3075. The trial court therefore erred in enforcing the Consent Judgment against Southern Cross and dismissing Southern Cross's claims against Adams.[11]

**Reservation of Claims Based on Adams' Own Acts**

Plaintiffs contend that the terms of the Consent Judgment preserved claims based on Adams' own acts. Plaintiffs further allege that the actions sued upon arise from Adams' own acts, and the trial court therefore erred in granting the Motion to

---

[10] We note that Plaintiffs' Petition for Damages is captioned "Jason Meadows, Individually, and Jason Meadows on Behalf of Southern Cross Marine Services, LLC v. Christy Adams," and states that it is brought by Meadows, individually, and Meadows "on behalf of and as sole member of Southern Cross Marine Services, LLC." Under these facts, we find that claims were properly brought on behalf of Southern Cross. See **Zeigler v. Hous. Auth. of New Orleans**, 2012-1168 (La.App. 4 Cir. 4/24/13), 118 So.3d 442, wherein suit was brought by "plaintiff, Lester Zeigler, individually and on behalf of Inspeq [Services, LLC]." *Id.* at 447. Zeigler asserted claims personally "and in his representative capacity for Inspeq." *Id.* at 448, n. 4. The defendants filed an exception raising the objection of no right of action regarding Zeigler's personal standing to sue for damages to Inspeq. The trial court granted the exception, and the Fourth Circuit affirmed that holding, finding that Zeigler, "in his personal capacity, [had] no standing to personally sue and recover damages for injury suffered by Inspeq." *Id.* at 450-51. However, this determination did not preclude Inspeq from asserting claims for damages it sustained. *Id.* at 451, 458-59.

[11] We note, however, that pursuant to the terms of the Consent Judgment, Meadows assumed full liability for holding Adams free and harmless from any responsibility for debts arising or due from the former community. Meadows further agreed to indemnify, defend, and hold Adams harmless from "[a]ny and all debts associated with any property received by [Meadows] as a result of the [Consent Judgment]," which includes Southern Cross. We therefore question whether Adams could be liable to Southern Cross, given that Meadows is the sole member of Southern Cross. However, the issue of any liability to Southern Cross is not before us.

Enforce Consent Judgment. In response, Adams argues that the language Plaintiffs rely on did not reserve Meadows' right to bring claims based on Adams' own acts in general. Rather, said language merely provided a warranty as to her own acts with respect to her right, title, and interest in specified property. Having already determined that Southern Cross is not bound by the Consent Judgment, we limit our analysis herein to the effect of the terms of the Consent Judgment on Meadows' individual right to assert claims against Adams.

A compromise instrument, such as the Consent Judgment at issue in this appeal, is the law between the parties and must be interpreted according to the parties' true intent, pursuant to the same general rules of construction applicable to contracts. **Gaubert v. Toyota Motor Sales U.S.A., Inc.**, 1999-2569 (La.App. 1 Cir. 11/3/00), 770 So.2d 879, 881. When the language of a consent judgment is clear and explicit, no further interpretation may be made in search of the parties' intent. **Hoddinott v. Hoddinott**, 2018-1474 (La. 12/17/18), 258 So.3d 588. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050; **Naquin v. Louisiana Power & Light Co.**, 2005-2103 (La.App. 1 Cir. 9/15/06), 943 So.2d 1156, 1161, writ denied, 2006-2476 (La. 12/15/06), 945 So.2d 691. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law. **Prejean v. Guillory**, 2010-0740 (La. 7/2/10), 38 So.3d 274, 279. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. **Prejean**, 38 So.3d at 279.

Significantly, the Consent Judgment opens in part: "[Meadows and Adams] stipulate that this agreement is made pursuant to [LSA-C.C. art.] 3071 and is entered into between the parties in an effort to prevent and/or put an end to any litigation" ("opening statement"). The Consent Judgment further elaborates on Meadows' and Adams' intent to resolve their dispute as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the parties agree that both *specifically and forever waive any right* they *may or may not have, now or ever,* to make reimbursement claims [against]

11

each other, *valid or invalid,* whether the existence of the claim is *currently known or unknown,* to include claims for contribution to education and/or training, claims for reimbursement or rent, for separate obligations paid with community funds, and *any other claims arising out of the community of acquets and gains formerly existing between the parties*[.]

(Emphasis added.)("waiver provision".)

In this matter, Meadows' Petition for Damages asserts claims arising under LSA-C.C. art. 2354, for loss or damage caused by fraud or bad faith in the management of community property, sustained as a result of Adams' actions while employed by Southern Cross during the parties' marriage. However, the waiver provision specifically states that Meadows agreed to waive "any right" he "may or may not" have, "now or ever," to make reimbursement claims, whether those claims are "valid or invalid" or "known or unknown." Further, Meadows waived his right to assert "any other claims arising out of the community of acquets and gains formerly existing between the parties." This language is clear and specific, and it plainly encompasses the claims Meadows asserts in the instant proceedings.

Nevertheless, Plaintiffs argue that the following transfer provision reserved Meadows' right to assert claims against Adams if those claims arose from her own acts:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT JASON MEADOWS hereby receives and CHRISTY ADAMS hereby grants, bargains, sells, conveys, and delivers, *without any warranty except to her own acts,* and with full subrogation of all of her rights and actions of warranty, against all prior owners, unto JASON MEADOWS, all of her rights, title and interest in and to the following property, to-wit:

A. One hundred percent (100%) right, title, and interest in and to any and all titled and non-titled movable items which are in his actual physical possession on the date that this agreement is signed by the parties;

B. One hundred percent (100%) right, title, and interest in and to the 2003 Ford F-250[...];

C. One hundred percent (100%) right, title, and interest in and to any and all banking, credit, investment, and retirement accounts in his name; and

D. One hundred percent (100%) right, title, and interest in and to Southern Cross Marine, LLC.

(Emphasis added, original emphasis omitted.) However, we note that the transfer provision addresses specifically identified property, and states that Adams "grants, bargains, sells, conveys, and delivers," her rights, title, and interest in and to that

property. The "warranty as to [Adams'] own acts" specifically applies to her "rights, title[,] and interest in and to" that property. The transfer provision does not provide a basis for the application of the warranty as to Adams' own acts to anything other than the title to the property specifically identified therein.

Further, the following provision states that there are no warranties other than those explicitly contained in the Consent Judgment: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT this agreement is the entire understanding between CHRISTY ADAMS and JASON MEADOWS. There are no warranties, representations, promises, covenants, or undertakings other than those expressly set forth herein[.]" (Emphasis omitted.) This language is consistent with our interpretation of the transfer provision, as it indicates that the warranty as to Adams' own acts was an exception to the general absence of warranties in the Consent Judgment.

Having thoroughly reviewed the record and applied the principles of contractual interpretation to the Consent Judgment, we find that the plain language of the Consent Judgment clearly precluded Meadows from instituting the instant proceedings on the basis of Adams' alleged actions with respect to the former community. The trial court properly granted the Motion to Enforce Consent Judgment against Meadows and correctly dismissed his claims. This assignment of error lacks merit.

## CONCLUSION

For the above and foregoing reasons, the May 8, 2018 judgment of the trial court is affirmed to the extent that it granted the Motion to Enforce Consent Judgment as to Meadows and accordingly dismissed Meadows' claims. The May 8, 2018 judgment is reversed to the extent that it granted the Motion to Enforce Consent Judgment as to Southern Cross and dismissed Southern Cross's claims. We remand for further proceedings consistent with the views expressed in our opinion herein. All costs of this appeal are assessed to plaintiff, Jason Meadows.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

JASON MEADOWS, INDIVIDUALLY
AND JASON MEADOWS ON BEHALF
OF SOUTHERN CROSS MARINE
SERVICES, LLC

VERSUS

CHRISTY ADAMS

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2018 CA 1544R

WHIPPLE, C.J., concurring.

I feel compelled to point out a problem with the judgment before us, which, in my view, requires dismissal of the appeal. Specifically, the judgment is problematic in that it does not name the plaintiff anywhere in the judgment, and thus, does not contain proper decretal language. The judgment orders that "**plaintiff's claims**" are dismissed with prejudice, without identifying the plaintiff by name nor indicating which plaintiff it is referring to in the ruling. The case caption is set forth at the top of the judgment and lists both plaintiffs and the defendant. While Christy Adams is sufficiently identified (three times) in the body of the judgment as the defendant, the two plaintiffs are not identified as such **in the judgment**.

The petition herein was filed by: (1) Jason Meadows in his individual capacity; and (2) Jason Meadows on Behalf of Southern Cross Marine Services, LLC. As the majority notes, Meadows and Southern Cross are wholly separate entities.

Louisiana Code of Civil Procedure article 1918 states that "A final judgment shall be identified as such by appropriate language." It is well settled that a final judgment must be precise, definite, and certain. Vanderbrook v. Coachmen Industries, Inc., 2001-0809 (La. App. 1st Cir. 5/10/02), 818 So. 2d 906, 913. A final judgment must contain decretal language. Carter v. Williamson Eye Center, 2001-2016 (La. App. 1st Cir. 11/27/02), 837 So. 2d 43, 44. Generally, it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Id. The specific relief

granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Vanderbrook, 2001-0809 at pp. 11-12, 818 So. 2d at 913. The failure to name the defendant or defendants against whom the judgment is rendered in a case with multiple defendants makes the judgment fatally defective because one cannot discern from its face against whom it may be enforced. Jenkins v. Recovery Technology Investors, 2002-1788 (La. App. 1st Cir. 6/27/03), 858 So. 2d 598, 600. Because only judgments are made executory in Louisiana courts, LSA-C.C.P. art. 2781, *et seq.*, to be legally enforceable as a valid judgment, a third person should be able to determine from the judgment the party cast and the amount owed without reference to other documents in the record. Conley v. Plantation Mgmt. Co., 2012-1510 (La. App. 1 Cir. 5/6/13), 117 So. 3d 542, 546–47, writ denied, 2013-1300 (La. 9/20/13), 123 So. 3d 178.

This court has found a judgment to be valid where, although it did not refer to the plaintiff by name, there was only **one** plaintiff involved in the case and the plaintiff's name was discernible from the caption of the judgment. Hammonds v. Reliance Ins. Co., 2006-0540 (La. App. 1st Cir. 12/28/06), 2006 WL 3813719. However, in the instant case, there are two plaintiffs, and on its face, the judgment under consideration in this appeal does not actually state whether it dismisses the claims of Jason Meadows in his individual capacity, or the claims of Jason Meadows as the sole member of Southern Cross Marine Services, LLC (or both).

At a minimum, the judgment should have said "**plaintiffs'** claims" instead of "**plaintiff's** claims." The majority assumes that the judgment dismissed **both** plaintiffs' claims with prejudice and affirms the dismissal of Meadows' claims in his individual capacity, while reversing the dismissal of Southern Cross's claims. Nonetheless, even if the parties and the court meant for the judgment to dismiss the "plaintiffs' claims," the plaintiffs are not identified as such in the judgment unless we resort to discerning their identity from the case caption heading. Parties are

2

added to and dismissed from cases all the time without any change in the case caption. Thus, in my view, the judgment is defective as it lacks proper decretal language which seemingly requires that we dismiss the appeal.

However, because the majority concludes that we do have appellate jurisdiction, I am required to vote on the merits. See Rainey v. Entergy Gulf States, Inc., 2008-2233 (La. 12/12/08), 996 So. 2d 1058. Accordingly, after careful consideration of the record, I agree with the majority's ultimate ruling on the merits.

Thus, I respectfully concur.

3